MATTHEW J. MARINO (BAR NO. 214440)
JOSEPH L. MCGEADY (BAR NO. 308408)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone:  (619) 233-1155
Fax:  (619) 233-1158
E-Mail:  mmarino@allenmatkins.com
        jmcgeady@allenmatkins.com

MELISSA K. REAGAN (CO BAR NO. 36885; *Pro Hac Vice Admission Pending*)
ALLISON R. BURKE (CO BAR NO. 54916; *Pro Hac Vice Admission Pending*)
SHERMAN & HOWARD L.L.C.
675 Fifteenth Street, Suite 2300
Denver, Colorado  80230
Phone:  (303) 297-2900
E-Mail:  mreagan@shermanhoward.com
        aburke@shermanhoward.com

Attorneys for Plaintiff
CITYSWITCH – II-A, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITYSWITCH – II-A, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF IMPERIAL, CALIFORNIA; and IMPERIAL COUNTY PLANNING COMMISSION, <br><br> Defendants. | Case No. **'24 CV 0607 GPC MSB** <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTION, AND MANDAMUS; REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff, CitySwitch – II-A, LLC ("CitySwitch"), through counsel, for its Complaint against the County of Imperial, California ("Imperial County"), and the Imperial County Planning Commission ("Commission") (collectively, "Defendants" or the "County"), states and alleges as follows:

## I.   <u>NATURE OF THE ACTION</u>

1.     This is an action for declaratory, injunctive, and mandamus relief pursuant to 47 U.S.C. § 332 and 28 U.S.C. § 2201, and arises from the County's unlawful denial — in violation of the Federal Telecommunications Act of 1996, as amended (the "Act"), and Cal. Code Civ. Proc § 1094.5 – of CitySwitch's applications for Conditional Use Permits ("CUPs") and Variances ("Variances") to install new wireless facilities (collectively, the "Facilities") on properties owned by Union Pacific Railroad and located in Imperial County (collectively, the "Sites") as follows:

   a.     **CUP23-0009, Variance 23-0003**: a 155-foot monopole tower with a 10-foot lightning rod for a total height of 165-feet to be built at 5359 East Highway 78, Brawley, California on railroad right-of-way owned by Union Pacific Railroad and leased to CitySwitch (the "Ben Hulse Application").

   b.     **CUP23-0010, Variance 23-0004**: a 170-foot monopole tower with a 10-foot lightning rod for a total height of 180-feet to be built at 673 Sidewinder Road, Winterhaven, California, on a railroad right-of-way owned by Union Pacific Railroad and leased to CitySwitch (the "Winterhaven Application").

     c.    **CUP23-0011, Variance 23-0006**: a 200-foot monopole tower with a 10-foot lightning rod for a total height of 210-feet to be built at 1505 East Keystone Road, Brawley, California on railroad right-of-way owned by Union Pacific Railroad and leased to CitySwitch (the "Brawley Application").

(Collectively, the "Applications").

2. Here, the County violated the Act and its limitations when it denied CitySwitch's Applications for two reasons: (1) its decisions were not based on substantial evidence, which violates 47 U.S.C. § 332(c)(7)(B)(iii); and (2) its decisions effectively prohibit CitySwitch from providing wireless services, which violates 47 U.S.C. § 332(c)(7)(B)(i)(II).

3. The County also violated Cal. Code Civ. Proc. § 1094.5, which states that the County's decisions may be reviewed for, among other things, "any prejudicial abuse of discretion." A "prejudicial abuse of discretion" is "established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

4. As a remedy for the County's violation of the Act and Cal. Code Civ. Proc. § 1094.5, CitySwitch requests the Court order the County to issue its approval of CitySwitch's Applications. CitySwitch also requests expedited judicial review of these claims under 47 U.S.C. § 332(c)(7)(B)(v), including an expedited briefing schedule and hearings on motions.

## II. PARTIES, JURISDICTION, AND VENUE

5. CitySwitch is, and at all times relevant hereto has been, a Georgia limited liability company with its principal place of business located in Atlanta, Georgia.

6. Imperial County is a municipal entity located in the State of California.

7. The Commission is an advisory and decision-making authority created by the Imperial County Board of Supervisors, has an address of 801 Main Street, El Centro, California 82243, and is empowered with the duties and responsibilities specified within Chapter 3, Title 9, of the County of Imperial Codified Ordinances (the "Code"). The Commission is supported by the Staff of the Imperial County Planning & Development Services Department ("County Staff").

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 because the claims for declaratory, injunctive, and mandamus relief pled herein all arise under the laws of the United States, specifically 47 U.S.C. § 332 (c) and 28 U.S.C. § 2201, or are inextricably related to the federal questions presented. CitySwitch seeks a declaration of its rights under the Act, and injunctive and mandamus relief from this Court. These statutes provide this Court the jurisdiction to do so.

9. This case presents an actual controversy under Article III of the United States Constitution including the Supremacy Clause, U.S. Const. Article VI, Clause 2, and the federal Communications Act, 37 U.S.C. § 151, *et seq*.

10. A real, immediate, actual, justiciable, and substantial continuing controversy exists between CitySwitch and the County as to whether the County's denial of CitySwitch's Applications for CUPs and Variances and approval to place and construct wireless services facilities violates the Act.

11. CitySwitch has been adversely aggrieved and affected by the County's final actions and failures to act, which are inconsistent with, and in violation of, the Act, which specifically allows CitySwitch to commence this action to obtain the relief sought herein. 47 U.S.C. § 332(c)(7)(B)(v).

12. The Court also has subject matter jurisdiction under 28 U.S.C. § 1367 for CitySwitch's claim for administrative review under California law, which are so related to CitySwitch's claims under 47 U.S.C. § 332 that they form part of the same case or controversy.

13. Under 28 U.S.C. § 1391(b), venue is proper in this Court because the County is located in this judicial district, the events and/or omissions giving rise to this action occurred in this judicial district, and the property affected is located in this judicial district.

## III. EXPEDITED REVIEW REQUIREMENT

14. Expedited review of this action is required pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the Act, which provides that "[t]he court shall hear and decide such action on an expedited basis."

## IV. FACTUAL BACKGROUND

### A. The Project

15. CitySwitch is in the communications industry and provides services that assist in the provision of personal wireless services to the public pursuant to licenses issued by the Federal Communications Commission ("FCC"). To assist in providing those personal wireless services, CitySwitch must deploy supporting infrastructure in the State of California in the form of wireless towers designed for collocation by wireless service providers ("Facilities"). CitySwitch's customers include wireless providers like Verizon Wireless and AT&T, whose customers, in turn, include governmental agencies, emergency services providers, members of the public, and businesses — all of whom rely on a stable network to provide seamless services.

16. The FCC oversees the provisioning of personal wireless services to all of these users, and licenses providers of personal wireless services to use resources, frequencies and spectrum allocated by the FCC for the provision of such services to the public.

17. The Act, while preserving a degree of state and local authority over the placement, construction, or modification of wireless facilities, expressly preempts state or local governments from taking actions that prohibit or have the effect of prohibiting the provision of personal wireless services. Given this express

preemption, any decision by a state and locality denying an application related to wireless facilities must be in writing, supported by substantial evidence contained in a written record, and timely issued. 47 U.S.C. § 332(c)(7)(B)(i)-(iv).

18. The collocating customers of CitySwitch (e.g., AT&T) communicate and transmit massive amounts of data through smart phones, tablets, and other mobile devices via a network of Facilities, each of which operate at low power and use the finite amount of the radio frequency spectrum allotted by the FCC.

19. CitySwitch submitted the Applications for CUPs and Variances as required under the Code.

20. The Ben Hulse Application sought a CUP and Variance for a telecommunications facility that would include a 155-foot monopole tower with a 10-foot lightning rod.

21. The Ben Hulse Application disclosed to the County that an existing tower owned by SBA Structures, LLC ("SBA") is located approximately .30 miles southeast of the proposed CitySwitch tower.

22. The Winterhaven Application sought approval for a 170-foot monopole tower with a 10-foot lightning rod.

23. The Winterhaven Application disclosed to the County that an existing tower owned by SBA is located approximately .36 miles southeast from the proposed CitySwitch tower.

24. The Brawley Application sought approval for a 210-foot monopole tower with a 10-foot lightning rod.

25. The Brawley Application disclosed to the County that an existing tower owned by SBA is located approximately .18 miles north of the proposed CitySwitch tower.

26. Within each of the Applications, CitySwitch provided a Sworn Statement of Spencer Gambrell in Support of New Tower Construction from AT&T – CitySwitch's primary tenant (the "Economic Burden Affidavits") and a

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4895-3101-2530.1                                                    -6-

tenant on the proposed Facilities – explaining (1) why continued collocation on the existing SBA towers was economically burdensome to AT&T; (2) that SBA charges non-market rents and imposes non-market lease terms; and (3) SBA has long-resisted amendments to its long-term leases that would make the leases more competitive in the current wireless tower lease marketplace. Mr. Gambrell also explained that space on the CitySwitch towers, in contrast, would be offered to AT&T at market rents and on favorable lease terms that would allow AT&T to invest its resources in improving its equipment and network coverage, rather than high rents.

**B.     The County's Code Requirements**

27.     The County's wireless facilities regulations are codified in Title 9, Division 24, of the Code.

28.     Section 92401.00 of the Code, entitled "Purpose," states, in relevant part:

> This division is enacted to establish a consistent set of standards regulating the placement and design of all types of communication facilities in unincorporated areas of Imperial County. These standards are intended to protect and promote public health, safety, community welfare and the unique visual character of Imperial County by encouraging the orderly development of communication infrastructure. It is the intent of the board that these regulations serve to:
>
> A.     Protect residential areas and other land uses from potential adverse impacts of towers and antennas;
> B.     Encourage the location of towers and regeneration facilities in nonresidential areas;
> C.     Minimize the number of towers throughout the community;
>                                 * * *
> E.     Encourage users of towers and antennas to locate them, to the extent possible, in areas where the adverse impact on the community is minimal;
>                                 * * *
> G.     Enhance the ability of the providers of telecommunications services to provide such services to the community quickly, effectively, and efficiently[.]

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

29. Sections 92401.04 and 92404.01 of the Code identify the general requirements for a new, altered, or re-permitted communication facility within unincorporates areas of the County.

30. Section 92401.05 of the Code identifies the permitting and application requirements for all communications facilities within the County.

31. Section 92401.06 identifies the requirements for an "alternatives analysis."

32. Section 92401.09 identifies the additional requirements for towers.

33. Section 90201.00 *et seq*. identifies the requirements for CUPs.

34. Section 90202.00 *et seq*. identifies the requirements for Variances.

**C.    County Staff's Review of the Applications**

35. CitySwitch submitted the Applications on April 12, 2023.

36. County Staff reviewed the Applications and notified CitySwitch on April 13, 2023, that it required wet signatures on the Applications, as well as executed copies of the Owner's Affidavit, General Indemnification Form, and Notice to Applicant Form.

37. On June 29, 2023, the County requested information relating to the on-site equipment for each of the Applications, including the number of antennas, radios, surge suppressors, equipment cabinets, power/backup generators, and any additional equipment needed for optimal operations.

38. July 11, 2023, CitySwitch provided the Applications with wet signatures, and executed copies of the Owner's Affidavit, General Indemnification Form, and Notice of Applicant Form.

39. County Staff reviewed the Applications and did not notify CitySwitch of any further deficiencies with the Applications.

40. On July 24, 2023, County Staff requested revised coverage plots for all three Sites showing coverage provided by AT&T's equipment collocated on the

existing SBA towers, and how coverage would change with the AT&T's equipment collocated on the proposed Facilities.

41. On October 6, 2023, CitySwitch provided equipment lists to County Staff for the Facilities.

42. Also on October 6, 2023, CitySwitch provided to County Staff the revised coverage plots for all three Facilities, and reiterated why AT&T, a tenant on the existing SBA towers, could not continue collocating on the SBA towers due to high rents and non-market lease terms. A copy of CitySwitch's October 6, 2023, letter is attached as **Exhibit 1**.

**D.      The Airport Land Use Commission Hearing**

43. On July 7, 2023, County Staff provided notice that the Airport Land Use Commission scheduled a hearing to determine the advisability of a finding that the Applications are consistent or inconsistent with the Airport Land Use Compatibility Plan.

44. On July 19, 2023, the Airport Land Use Commission determined the Applications were consistent with the Imperial County Airport Land Use Compatibility Plan. A copy of the Meeting Minutes from the July 19, 2023, hearing reflecting the Airport Land Use Commission's determination is attached as **Exhibit 2**.

**E.      The Environmental Evaluation Committee Hearing**

45. On November 6, County Staff provided notice that the Environmental Evaluation Commission scheduled a hearing to determine the environmental impact of the Applications.

46. On November 16, 2023, the Environmental Evaluation Committee recommended Negative Declarations for all three Sites. A "Negative Declaration" means the Environmental Evaluation Committee determined the Applications will not have a significant effect on the environment. Copies of the Environmental Evaluation Committee's Negative Declarations are attached as **Exhibit 3**.

**F.      County Staff's Recommendations**

47.      On December 29, 2023, County Staff provided links to the Staff Reports for the Applications. The Staff Reports includes County Staff's recommendation, the prior findings from the Imperial County Airport Land Use Commission and Environmental Evaluation Committee, as well as full copies of the Applications themselves.

48.      The Staff Reports do not reference the Economic Burden Affidavits, and do not include or reference CitySwitch's October 6, 2023, letter.

49.      Each of the Staff Reports made the following finding with respect to the County's General Plan:

*GENERAL PLAN FINDINGS*      ☐ CONSISTENT      ☒ INCONSISTENT      ☐ MAY BE/FINDINGS

50.      Each of the Staff Reports explained in the Land Use Analysis section that the proposed projects were consistent with the allowable uses within the applicable zones (S-2 and A-2) with a CUP.

51.      The Staff Reports do not make any findings that the Applications do not meet the Code requirements identified in Sections 92401.04 or 92404.01.

52.      The Staff Reports do not make any findings that the Applications do not meet the Code requirements identified in Section 92401.05.

53.      The Staff Reports do not make any findings that the Applications do not meet the requirements of Section 92401.06.

54.      The Staff Reports do not make any findings that the Applications do not meet the requirements of Section 92401.09.

55.      The Staff Reports do not make any findings that the Applications do not meet the requirements of Section 90201.00 *et seq.*

56.      The Staff Reports do not make any findings that the Applications do not meet the requirements of Section 90202.00 *et seq.*

57. The Staff Reports determined that the proposed Facilities are "in conflict with Division 24, Section 92401.00 – Purpose, '… This Section standards are intended to protect, and promote public health, safety, community welfare and the unique visual character of the Imperial County [by] minimizing the number of towers throughout the community …" as the proposed Facilities would each be located approximately 1565 feet south, 2008.33 feet south, and 1,000 feet south, respectively, of existing towers owned by SBA.

58. On January 9, 2024, CitySwitch sent correspondence to County Staff and the Commission explaining why the recommendations in the Staff Reports were incorrect. A copy of CitySwitch's letter is attached as **Exhibit 4**.

59. Also on January 9, 2024, SBA submitted a letter stating its opposition to the Applications.

**G.      The Commission's January 10, 2024, Hearing**

60. On January 10, 2024, the Commission held its regular meeting, which included as an agenda item a public hearing on the Applications.

61. During the meeting, CitySwitch explained its position regarding the Applications, including why the existing SBA towers were not viable collocation sites for AT&T, that the Code contains no regulations imposing restrictions on the number of towers located within the County or the distance new towers must be from existing towers. CitySwitch also presented the PowerPoint attached as **Exhibit 5**. The PowerPoint again provided extensive information regarding why AT&T could no longer viably collocate on the existing SBA towers.

62. SBA also presented its opposition to the Applications, which was largely consistent with its January 9, 2024, written submission.

63. By unanimous vote, the Commission denied all three Applications (collectively, the "Decision").

64. On January 16, 2024, County Staff issued the Notifications of Action reflecting the Decision. The Notifications of Action are attached as **Exhibit 6**. The

Notifications of Action fail to include any written decision supported by substantial evidence in the record to support the Decision. The Notifications of Action merely state that the Commission denied the Applications.

**H.      CitySwitch's Appeal to the Board of Supervisors**

65.      Pursuant to the Code, and to exhaust its administrative remedies, CitySwitch appealed the Decision to the Board of Supervisors on January 22, 2024. CitySwitch timely filed its appeals.

66.      The Board of Supervisors has scheduled a hearing for April 9, 2024.

**I.      Grounds for Declaratory, Injunctive, and Expedited Relief**

67.      A present, actual controversy arose and now exists between CitySwitch and the County regarding their respective legal rights and duties. CitySwitch contends that the Decision violates the Act. Upon information and belief, the County denies these allegations.

68.      Declaratory relief is appropriate and necessary to adjudicate the Commission's duties and authority and CitySwitch's rights.

69.      As a result of the County's actions and violations of the Act, CitySwitch has been, and will continue to be, irreparably harmed if the injunctive relief requested herein is not granted. The irreparable harm caused by the County's unlawful Decision includes: (1) CitySwitch's ability to assist wireless providers in improving and enhancing its network; (2) the ability to provide assist wireless providers in providing emergency service providers and customers with wireless services; (3) the ability to offer competitive lease terms to attract cellar providers to lower-cost collocation sites so that wireless providers can re-route these resources to research, development, and expansion of their networks with the latest, rapidly evolving technologies.

70.      CitySwitch cannot be adequately compensated in damages for the irreparable harm caused by the Decision. CitySwitch does not have a plain, speedy, and adequate remedy at law.

71. The injunctive relief sought by CitySwitch will not disserve the public interest, as such relief is appropriate given there is a public interest to deter unlawful conduct like the County's conduct, to ensure decisions are not a prejudicial abuse of discretion, and applications are not unlawfully denied.

72. The Act provides, in pertinent part, that: "Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The Court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

73. On December 6, 2023, CitySwitch and the County entered into a Tolling Agreement. Paragraph 1 of the Tolling Agreement states:

> The parties agree that the time period within which the County may act on the Ben Hulse Application, Brawley Application, and Winterhaven Application under federal law, shall be extended through February 29, 2024 (the "Extension Date"), *and that no limitations period under federal law shall commence to run before the Extension Date*.

(Emphasis added.)

74. CitySwitch is a person "adversely affected" by the County's actions, failure to act, and denial of the Application, as that term is used in 47 U.S.C. § 332(c)(7)(B)(v).

75. This Complaint is timely filed within 30 days of the Extension Date set forth in the Tolling Agreement.

### FIRST CLAIM FOR RELIEF

**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) and (II), Effective Prohibition of Service:  Demand for Declaratory, Injunctive, and Mandamus Relief)**

76. CitySwitch incorporates all prior allegations as if fully set forth herein.

77. Section 332(c)(7)(B)(i)(II) of the Act, as amended, provides that the "regulation of the placement, construction, and modification of personal wireless

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

service facilities by any State or local government or instrumentality thereof … shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

78. The FCC's 2018 Declaratory Ruling issued In the Matter of *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Development*, 33 FCC Rcd. 9088 (2018) ("2018 FCC Order"), the FCC clarified that a state or local requirement constitutes an "effective prohibition" if it "materially limits or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment."

79. Under the 2018 FCC Order, a legal requirement can "materially inhibit" service even if it is not an "insurmountable barrier." 2018 FCC Order ¶¶ 34–35, 41–42.

80. The 2018 FCC Order also made clear that a state or local legal requirement effectively prohibits the provision of wireless services if it inhibits or limits a provider "not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." 2018 FCC Order ¶ 37.

81. The County's denial of the Applications prohibits or has the effect of prohibiting CitySwitch's provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), because it materially limits or inhibits CitySwitch from competing in a fair and balanced legal and regulatory market, and CitySwitch is adversely affected by the Decision.

82. CitySwitch is entitled to a declaration that the County violated the Act as described above and has the right to receive the CUPs and Variances for the Facilities.

83. As a direct and proximate result of the County's unlawful acts in violation of the Act, CitySwitch is adversely affected by, and has incurred, and will continue to incur in the future irreparable harm and injury.

84.    For these reasons, CitySwitch is entitled to a Judgment and an Order compelling the County and its agents by affirmative injunction and mandamus to issue to CitySwitch Conditional Use Permits and Variances for the placement and construction of CitySwitch's Facilities.

## SECOND CLAIM FOR RELIEF

**(Violation of 47 U.S.C. § 332(c)(7)(B)(ii) and (iii), Failure to Act within a Reasonable Period of Time, and Failure of "In Writing" and "Substantial Evidence" Requirements:  Demand for Declaratory, Injunctive, and Mandamus Relief)**

85.    CitySwitch incorporates all prior allegations as if fully set forth herein.

86.    Section 332(c)(7)(B)(iii) of the Act, as amended, provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

87.    In violation of this law, the denials of the Application ignored the factual evidence in the record that CitySwitch's Application complied with Code and warranted the issuance of the requested approval of the Applications.

88.    Under the Act, a written denial requires the County to: (1) provide reasons for the denial; (2) provide the reasons clearly enough to enable judicial review; (3) support the reasons for the denial by substantial evidence contained in a written record; and (4) provide the decision promptly and essentially contemporaneously with any denial so as to afford judicial review.

89.    The County failed to describe any reasons for a denial, or to give any explanation for the denial to allow a reviewing court to evaluate the evidence in the record that may even support the denial. Thus, the County complied with none of these requirements or the Act.

90.    The Applications met all requirements for approval, and there is no substantial evidence that supports the County's Decision.

91. Thus, the Decision was not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

92. CitySwitch is entitled to a declaration by this Court of the County's violations of the Act as described herein.

93. As a direct and proximate result of the County's unlawful acts in violation of the Act, CitySwitch is adversely affected by, and has incurred, and will continue to incur in the future irreparable harm and injury.

94. For these reasons, CitySwitch is entitled to a judgment and an order compelling the County and its agents by affirmative injunction and mandamus to issue to CitySwitch the Conditional Use Permits and Variances, necessary for the placement and construction of CitySwitch's Facilities as proposed in its Applications.

## THIRD CLAIM FOR RELIEF

**(Petition for Writ of Mandate under Cal. Code Civ. Proc. § 1094.5)**

95. CitySwitch incorporates all prior allegations as if fully set forth herein.

96. The evidence in the administrative record required the approval of CitySwitch's Applications so that CitySwitch could install and operate its Facilities.

97. The Decision constituted a prejudicial abuse of discretion and failed to proceed in the manner required by law because the Decision is not supported by the findings and is not supported by substantial evidence. Rather, the County asserts the Applications failed to comply with the "Purpose" of the Code – which is not a regulation or requirement but is instead the goal of the regulations and requirements – without providing comprehensive reasoning for its denial. The Applications comply with the Code, yet the Commission prejudicially abused its discretion in concluding otherwise.

98. Pursuant to Cal. Code Civ. Proc. § 1094.5(b), the County's denial of CitySwitch's Applications should be reversed because there was a prejudicial abuse of discretion in violation of California law.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4895-3101-2530.1                                     -16-

99. CitySwitch is entitled to a judgment and an order compelling the County and its agents to reverse the County's denials of the Applications and issue CitySwitch the Conditional Use Permits and Variances necessary for the construction of the Facilities as proposed in CitySwitch's Applications.

WHEREFORE, CitySwitch respectfully requests the Court enter Judgment on its Claims for Relief as follows:

A. On the First Claim for Relief, for a Judgment and an Order:

(1) Declaring, pursuant to the Act and 28 U.S.C. § 2201, that the County's denial of the Application prohibits or has the effect of prohibiting CitySwitch's provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

(2) Declaring CitySwitch's right to proceed with the placement and construction of the Facilities on the Sites; and

(3) Compelling by affirmative injunction and mandamus the County and its agents to forthwith issue to CitySwitch the Conditional Use Permits and Variances necessary for the placement and construction of the Facilities as proposed in CitySwitch's Applications.

B. On the Second Claim for Relief, for a Judgment and an Order:

(1) Declaring, pursuant to the Act and 28 U.S.C. § 2201, that the County's denials were not justified or supported by substantial evidence contained in a written record in violation of 47 U.S.C. § 332(c)(7)(B)(ii) and (iii);

(2) Declaring CitySwitch's right to proceed with the placement and construction of the Facility on the Site; and

(3) Compelling by affirmative injunction and mandamus the County and its agents to forthwith issue to CitySwitch the Conditional Use Permits and Variances necessary for the placement and

construction of the Facilities as proposed in CitySwitch's Applications.

C.    On the Third Claim for Relief, for a Judgment and an Order:

    (1)    Enter an Order, pursuant to Cal. Code Civ. Proc. § 1094.5, finding that the County's denial of the Applications was a prejudicial abuse of discretion, and not in accordance with California law; and

    (2)    Compelling by affirmative injunction and mandamus the County and its agents to forthwith issue to CitySwitch the Conditional Use Permits and Variances necessary for the placement and construction of the Facilities as proposed in CitySwitch's Applications.

D.    On all Claims for Relief, for an Order awarding CitySwitch its costs, expenses, and attorneys' fees as allowed by law, and any and all other damages and interest to which CitySwitch is lawfully entitled, together with such other and further relief as the Court deems just and proper.

Dated:  March 29, 2024

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By:  *s/Matthew J. Marino*
      MATTHEW J. MARINO
      Attorneys for Plaintiff
      CITYSWITCH – II-A, LLC